UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 CV 1 2 5 2 7 NG

RODNEY G. SMITH, EXECUTIVE DIRECTOR )
of the TEAMSTERS UNION 25 HEALTH SERVICES )
AND INSURANCE PLAN, )

  Plaintiff, )

v. )

CAMBRIDGE STREET METALS COMPANY, INC. )

  Defendant. )

MAGISTRATE JUDGE

Civil Action No.

RECEIPT #
AMOUNT $150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 12/1/04

## COMPLAINT

### Introductory Statement

1. This is an action brought on behalf of Teamsters Union 25 Health Services and Insurance

Plan (hereinafter, the "Plan") to enforce the terms of the Plan documents and compel the

Defendant, Cambridge Street Metals, Company, Inc. (hereinafter, "Cambridge Street

Metals") to allow the Plan to audit its payroll records concerning contributions made to

the Plan.

### Jurisdiction and Venue

2. The jurisdiction of this Court is founded upon Section 502(e)(1) of the Employee

Retirement Income Security Act of 1974 (hereinafter, "ERISA"), as amended, 29 U.S.C.

§1132(e)(1), which grants the district courts of the United States exclusive jurisdiction of

civil actions brought to enforce the terms of an employee benefit plan and/or the

provisions of ERISA

3.    Venue is appropriate in this Court under Section 502(e)(2) of ERISA, 29 U.S.C.

§1132(e)(2), which provides that an action may be brought in the district where the

relevant employee welfare benefit plan is administered. and pursuant to 28 U.S.C.

§1391(a), because Plaintiff's claims arose in this District.

## Parties

4.    Rodney G. Smith (hereinafter, "Plaintiff") is the Executive Director of the Teamsters

Union 25 Health Services and Insurance Plan (hereinafter, "Plan").  He is a fiduciary of

the Plan within the meaning of ERISA Section 3(21), 29 U.S.C. §1002(21), and he is

authorized to bring this action on behalf of the Plan.

5.    The Plan is an "employee welfare benefit plan" within the meaning of ERISA Section

3(1), 29 U.S.C. §1002(1), and is a "multi-employer plan" within the meaning of Section

3(37)(A) of ERISA, 29 U.S.C. §1002(37)(A).  The Plan is administered by Trustees in

accordance with LMRA Section 302(c)(5), 29 U.S.C. §186(c)(5), and exists for the

exclusive purpose of providing health, medical and related benefits to its participants and

beneficiaries.  The Plan has its principal office and is administered from 16 Sever Street,

Charlestown, Massachusetts 02129.

6.    Cambridge Street Metals Company, Inc. (hereinafter, "Defendant" or "Cambridge Street

Metals") is a corporation with a usual place of business at  500 Lincoln Street, P.O. Box

325, Allston, Massachusetts 02134.

## Allegations of Facts

7.    Throughout all times relevant herein, Defendant Cambridge Street Metals. has been

obligated to make contributions to the Plan in accordance with the terms of an Agreement

and Declaration of Trust executed between Defendant and the Plan, said contributions to

be made on behalf of each employee of the Defendant performing work within the scope of and/or covered by one or more collective bargaining agreements executed by the Defendant and Teamsters Local Union No. 25 (hereinafter, "Local 25").

8.      Pursuant to a collective bargaining agreement executed by Defendant and Local 25, Defendant authorized the Plan Trustees to have an independent certified public accountant audit Defendant's payroll and wage records to determine the accuracy of its contributions to the Plan. A true copy of the collective bargaining agreement is attached hereto as Exhibit 1.

9.      From October 17, 2003 to the present, accountants retained by the Plan Trustees have attempted to schedule an appointment with the Defendant for the purpose of examining and auditing Defendant's payroll records from January 1, 1999 to December 31, 2003.

10.     From October 17, 2003 and continuing to the present, the Plan's accountants have been denied access to Defendant's payroll records and has cancelled two previously scheduled appointments with the Plan's accountants.

## COUNT I

### (Enforcement of the Plan's Terms)

11..    Plaintiff reavers every allegation contained in paragraphs 1 through 10 herein.

12..    Defendant Cambridge Street Metals has violated the terms of the Plan by failing to furnish the accountants retained by the Plan with the information and documentation referred to in paragraph 8.

13.     Plaintiff is entitled to enforcement of the Plan's terms pursuant to ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3).

## COUNT II

### (Breach of Contract)

14.    Plaintiff reavers every allegation contained in paragraphs 1 through 13 herein.

15.    Defendant Cambridge Street Metals has breached its contractual obligations to furnish

the information and documentation referred to in paragraph 8.

16.    Plaintiff is entitled to enforcement of those contractual obligations.


**WHEREFORE**, the Plaintiff prays the Court to grant him the following:

(a)    A judgment in favor of Rodney G. Smith, as Executive Director of the Teamsters Union 25 Health Services and Insurance Plan, and against Cambridge Street Metals;

(b)    An order obligating Defendant Cambridge Street Metals to furnish the accountants retained by the Plan with the information and documentation referred to in paragraph 8;

(c)    Attorneys' fees and costs; and

(d)    Any such other relief as the Court finds appropriate.

> For the Plaintiff,
> **RODNEY G. SMITH, EXECUTIVE**
> **DIRECTOR of the TEAMSTERS UNION 25**
> **HEALTH SERVICES AND INSURANCE**
> **PLAN**
> By his attorneys,
>
> Matthew E. Dwyer
> B.B.O. # 139840
> Kathleen A. Pennini
> B.B.O. # 654573
> Dwyer, Duddy & Facklam, P.C.
> One Center Plaza; Suite 360
> Boston, MA  02108-1804
> (617) 723-9777

Date:    December 22 2004

f:\l25hsip\cambridge sheet metals (audit)\pldg\complaint.doc:blg

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Rodney G. Smith, Executive Director of the Teamsters Union 25 Health Services and Insurance Plan v. Cambridge Sheet Metals Company Inc.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

- [ ]  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- [x]  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

- [ ]  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

- [ ]  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

- [ ]  V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]     NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES [ ]     NO [x]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]     NO [x]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]     NO [ ]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [x]     NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [x]          Central Division [ ]          Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]          Central Division [ ]          Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]     NO [x]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Matthew E. Dwyer, Esq. and Kathleen A. Pennini, Esq.

ADDRESS Dwyer, Duddy and Facklam, P.C., One Center Plaza, Suite 360, Boston, MA  02110

TELEPHONE NO. (617) 723-9777

(Coversheetlocal.wpd - 10/17/02)

°₀JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Rodney G. Smith, Executive Director Teamsters Union 25 Health Services and Insurance Plan

**(b)** County of Residence of First Listed Plaintiff **Suffolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Cambridge Street Metals Company, Inc.

County of Residence of First Listed **Suffolk**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Matthew E. Dwyer, Esq; Kathleen A. Pennini, Esq. Dwyer, Duddy and Facklam, P.C., One Center Plaza, Suite 360, Boston, MA 02108 (617) 723-9777

Attorneys (If Known)

John Simon, Esq; Kay Hodge, Edq. Stoneman, Miller and Chandler, LLP 99 High Street, Boston MA 02110

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 810 Selective Service |
| | [ ] 345 Marine Product Liability | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| [ ] 195 Contract Product Liability | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| | | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus | | |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 530 General | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 535 Death Penalty | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [X] 540 Mandamus & Other | [ ] 790 Other Labor Litigation | |
| | | [ ] 550 Civil Rights | [X] 791 Empl. Ret. Inc Security Act | |
| | | [ ] 555 Prison Condition | [ ] 871 IRS—Third Party 26 USC 7609 | |

*(PERSONAL INJURY) [ ] 362 Personal Injury - Med. Malpractice [ ] 365 Personal Injury — Product Liability [ ] 368 Asbestos Personal Injury Product Liability; PERSONAL PROPERTY [ ] 370 Other Fraud [ ] 371 Truth in Lending [ ] 380 Other Personal Property Damage [ ] 385 Property Damage Product Liability*

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

29 U.S.C. 1132(a)(3)(B) - Defendant has failed to allow the Plaintiff to audit its payroll records as required by the terms of the Plan.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



# A G R E E M E N T

## -BETWEEN-

### TEAMSTERS LOCAL 25
### INTERNATIONAL BROTHERHOOD OF TEAMSTERS

and

### CAMBRIDGE STREET METAL CO., INC.

For The Period

### APRIL 1, 1998 TO MARCH 31, 2002

**George W. Cashman**
**President/Principal Officer**

**Ritchie E. Reardon**
**Secretary-Treasurer**

**Printed & Assembled by**
**Teamsters Local 25**
**Office Staff**

## INDEX

| ARTICLE NUMBER | TITLE | PAGE No. |
|---|---|---|
| I | SCOPE OF AGREEMENT | 1 |
| II | UNION RECOGNITION AND UNION SECURITY | 2 |
| III | STEWARDS | 3 |
| IV | LEAVE OF ABSENCE | 5 |
| V | SENIORITY | 5 |
| VI | MAINTENANCE OF STANDARDS | 8 |
| VII | GRIEVANCE PROCEDURE | 9 |
| VIII | PROTECTION OF RIGHTS | 10 |
| IX | DISCHARGE AND SUSPENSION | 10 |
| X | PAYROLL PERIOD | 11 |
| XI | SUNDAYS AND HOLIDAYS | 11 |
| XII | VACATIONS | 12 |
| XIII | MISCELLANEOUS | 13 |
| XIV | HOURS OF WORK AND OVERTIME | 16 |
| XV | WAGES AND ALLOWANCES | 18 |
| XVI | DROPPING TRAILERS | 18 |
| XVII | PAY FOR TIME | 19 |
| XVIII | HEALTH AND WELFARE FUND | 19 |
| XIX | PENSION FUND | 21 |
| XX | SEPARABILITY AND SAVINGS PROVISIONS | 24 |
| XXI | EMERGENCY RE-OPENING | 24 |
| XXII | PIGGYBACK OR OTHER SUBSTITUTE METHODS OF OPERATION | 25 |
| XXIII | MILEAGE RATES | 25 |
| XXIV | SUBCONTRACTING | 25 |
| XXV | SYMPATHETIC ACTION | 26 |
| XXVI | NON-DISCRIMINATION | 26 |
| XXVII | TERMINATION AND RENEWAL | 27 |
| APPENDIX A | WAGE RATES AND CLASSIFICATIONS | 28 |

# AGREEMENT

This Agreement made this 1st day of April 1994, by and between CAMBRIDGE STREET METAL CO., INC. hereinafter called the "Employer" and the TEAMSTERS UNION LOCAL NO. 25, affiliated with the International Brotherhood of Teamsters, hereinafter called the "Union" agree to be bound by the terms and provision of this Agreement.

## ARTICLE I
## SCOPE OF AGREEMENT

(a) The execution of this Agreement on the part of the Employer shall cover all operations of the Employer within, into and out of the area herein.

All operations and work covered herein shall be performed exclusively by employees covered by this Agreement.

(b) This Agreement shall be binding upon the parties hereto, their heirs, successors, administrators, executors and assigns. In the event an entire operation, or any part thereof, is sold, leased, transferred or taken over by sale, transfer, lease or assignment, receivership, bankruptcy proceedings, or is taken over by management control, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. On the sale, transfer, or lease of any individual run or runs, only the specific provisions of the Agreement shall prevail. It is understood by this section, that the parties hereto shall not use any leasing device to a third party to evade this Agreement.

The Employer shall give notice of the existence of this Agreement to any heir, transferee, purchaser, lessee, assignee, etc., of the operations covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union not less than thirty (30) days prior to the effective date of sale or transfer. No part of the work or operations covered by this Agreement shall be sublet, transferred or in any other manner disposed of without prior agreement of the Union.

(c) If the Employer contemplates opening or closing any plant within the jurisdiction of Teamsters Local 25, he shall notify the Union at least thirty ( 30) days prior to making such change.

In the event the Employer fails to give the notice herein required and fails to require the purchaser, the transferee, or lessee to assume the obligations of the contract, the Employer shall be liable to the union and to the employees covered for all damages sustained as a result of such failure to give notice of such failure to require assumption of the terms of this contract.

(d) In all cases, hired or leased equipment shall be operated by an employee of the Employer. The Employer expressly reserves the right to control the manner, means and details of, any by which the owner-operator performs his service, as well as the ends to be accomplished.

## ARTICLE II
## UNION RECOGNITION AND UNION SECURITY

(a) The Employer recognizes and acknowledges that the Union is the exclusive representative of all employees in the classifications of work covered by this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as amended.

(b) All present employees who are members of the Local Union on the effective date of this subsection or on the date of execution of this Agreement, whichever is the later, shall remain members of the Local Union in good standing as a condition of employment. All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the 31st day following the beginning of their employment or on and after the 31st day following the effective date of this subsection or the date of this Agreement, whichever is the later.

(c) When the Employer needs additional employees, he shall give the Local Union equal opportunity with all other sources to provide suitable applicants, but the Employer shall not be required to hire those referred by the Local Union.

If employees are hired through an employment agency, the Employer shall pay the employment agency fee, if any, due from the employee. However, if the local Union has been given equal opportunity to furnish employees as provided herein, and if the employee is retained through the probationary period, this fee need not be paid until the thirty-first (31st) day of employment.

(d) If, during the life of this Agreement, the Labor-Management Relations Act of 1947, as amended is modified so as to permit the inclusion of the Union Security provisions formerly in effect and accepted as industry practice, those provisions shall automatically become effective and a part of this Agreement. The rights of the parties under the Labor-Management Relations Act of 1947, as amended, shall not be modified or restricted by any of the provisions of this Agreement.

(e) Nothing contained in this Agreement shall be construed so as to require the Employer or employees to violate any applicable law.

(f) Supervisory personnel of the Employer shall be restricted from performing the work which is recognized as the work of the employees covered by this Agreement except as otherwise provided Article V herein.

(g) No provisions of this Article shall apply in any State to the extent that it may be prohibited by State Law. If under applicable State Law, additional requirements must be met before any such provisions may become effective, such additional requirements shall be first met.

(h)  If any provisions of this Article is invalid under the law of any State wherein this contract is executed, such provisions shall be modified to comply with the requirements of State Law or shall be re-negotiated for the purpose of adequate replacement. If such negotiations shall not result in mutually satisfactory agreement, either party shall be permitted all legal or economic recourse.

(i) The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions taken from the 1st payroll period of each month and remit to the Local Union by the 2nd payroll period of each month.   Where laws require written authorization by the employee, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

(j) The Employer agrees to deduct certain specific amounts each week from the wages of those employees who shall have given the Employer written authorization to make such deductions.  The amounts so deducted shall be remitted to the TEAMSTERS CREDIT UNION once each week by electronic transfer methods.  The Employer shall not make deductions and shall not be responsible for remittance to the Credit Union for any deductions for those weeks during which the employee has no earnings or in those weeks in which the employee's earnings shall be less than the amount authorized for deduction.

(k) The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE.  DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked.  The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage.  The Employer shall transmit to DRIVE Chapter 25 on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

(l) If, by the last day of any given month, the Union is not in receipt of the amounts deducted from the employees' pay for dues initiation fees and/or assessments, the Local Union shall have the right, after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration provided in the Agreement. The aforesaid 72-hour notice to the Employer shall remain in full force and effect for a period of one year from the date of the occurrence upon which the notice is based.

## ARTICLE III
## STEWARDS

The employer recognizes the right of the union to designate job stewards and alternates from the Employer's seniority list.

The authority of job stewards and alternates so designated by the union shall be limited to, and shall not exceed the following duties and activities:

1. The investigation and presentation of grievance to his Employer, or the designated company representative in accordance with the provisions of this collective bargaining   agreement;

2. The collection of dues when authorized by appropriate Local Union action;

3. The transmission of such messages and information which shall originate with, and are authorized by the Local Union or its officers, provided such messages and information:

(a) have been reduced to writing, or

(b) if not reduced to writing, are of a routine nature and do not involve work stoppages, slow-downs, refusal to handle goods, or any other interference with the Employer's business.

Job stewards and alternates have no authority to take strike action, cause a slowdown or any other action interrupting the Employer's business, except as authorized by official action of the union.

The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement. The Union reserves the right to remove the Shop steward at any time, for the good of the Union.

Stewards shall be permitted to investigate, present and process grievances on or off the property of the Employer, without loss of time or pay. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

Stewards shall be granted super-seniority for all purposes including lay-off.

## ARTICLE IV
## LEAVE OF ABSENCE

(a) The Employer agrees to grant the necessary and reasonable time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business, provided forty-eight (48) hours' written notice is given to the Employer by the Union, specifying the length of time off. The Union agrees that, in making its request for time off for Union activities, due consideration shall be given to the number of employees affected in order that there shall be no disruption of the Employer's operation due to lack of available employees.

(b) Any employee desiring leave of absence from his employment shall secure written permission from both the Local Union and Employer. The maximum leave of absence shall be for thirty (30) days and may be extended for like periods. Permission for extension must be secured from both the Local Union and Employer. During the period of absence, the employee shall not engage in gainful employment. Failure to comply with this provision shall result in the complete loss of seniority rights for the employees involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights.

## ARTICLE V
## SENIORITY

Section 1:

(a) Seniority for employees governed by this Agreement shall be defined as the period of employment with the Employer in the work covered by this Agreement at the plant within the jurisdiction of the Local Union. It shall be deemed to include any seniority presently held by an employee through agreement between the Employer and the Local Union prior to this Agreement.

(b) All new employees shall be hired on a thirty (30) calendar days' trial basis and shall work under the provisions of the Agreement, within which time they may be dismissed without protest by the Union. However, the Employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against union members. After thirty ( 30) days' trial period, they shall be placed on the seniority list as regular employees in accordance with their date of hire, provided, however, that employees must work a minimum ninety-six (96) hours during their thirty (30) days' trial period. However, employees who complete the ninety-six (96) hours but less than thirty (30) calendar days, who are then laid off by the Employer and then rehired within the next sixty (60) calendar days, shall be considered as having made the seniority list as regular employees in accordance with their original date of hire.

(c) Preference shall be given to employees older in service and in order of their seniority to the work available, provided that such employees are available at such time as the work is assigned and are qualified to perform the work required.

(d) Employees, in order of their seniority, shall have preference:

1. In selection of starting times and assignment from the working schedule.

2. In filling of vacancies and job opportunities in the working schedule.

3. To work opportunity in the event of layoff for lack of work.

4. In recall to work after layoff.

5. In selection of vacations from the vacation schedule.

Seniority does **not** give an employee the right to choose any specific unit or load.

(e) A definite reporting time and working schedule covering all regular employees shall be established by the Employer and the union. It being understood that no employee shall be required to work in excess of ten (10) hours after returning from one tour of duty whether it be by driving or a combination of driving and dock work.

(f) Employees in the order of their seniority shall have the right to select their reporting times and assignments from the schedule, and to hold such assignments unless by a change in schedule or by layoff for lack of work. In the event of a layoff of more than five (5) consecutive working days, a senior Employee may bump a junior Employee in another location.

Sunday and Saturday work shall be apportioned among the regular employees in the manner determined by the Local Union and the Employer.

(g) Employees called to work before their regular scheduled report time shall not be required to take time off to compensate therefor.

(h) Employees shall be notified of a layoff at the end of their tour of duty. In the event of layoff, the most junior employee shall be the first laid off and rehiring shall be in the inverse order of seniority.

(i) In the event of a recall of an employee laid off, the laid off employee shall be given notice, at least the night before, or recall by telephone or telegram or personal contact, to the address last given the Employer by the employee. Where work develops during the next day, the Employer shall, in the order of the seniority of the laid off employees make such work available, by telephoning or telegram or personally contacting the employees at their home or such place as they shall have designated with the dispatcher as the place of contact. Employees recalled by the above procedure must notify the Employer as soon as possible in advance of the specified time for their report of their intention to report. In the event the employees fail to comply with the above provision they shall have no claim for work opportunity lost until they report, but the Employer shall be responsible for the work opportunity lost if said Employer shall fail to comply with these provisions.

<u>Section 2:</u>

(a) Merger

When two or more companies merge their operations then the employees of the respective companies shall all be placed on one seniority roster in the order of the earliest date of hire of each of the employees with their respective Employer.

(b) Acquisition or Purchase

When one company acquires or purchases control of the business of another company including control by an I.C.C. order, then the employees of the company so acquired or purchased shall be placed at the bottom of the acquiring or purchasing company's seniority roster in the order of their payroll or company seniority with the former company.

Section 3:

(a) Loss of seniority.

Seniority shall be broken only by:

(1) Discharge
(2) Voluntary quit
(3) Unauthorized leave of absence
(4) Unauthorized failure to report for work for seven (7) consecutive days when work is available.

(b) Employees who are absent because of proven illness or injury shall maintain their seniority.

Section 4.

Where employees are required, through no fault of their own to change residence from the Local Union's jurisdiction in order to follow employment as a result of an approved change of operation, the Employer shall move the employees or pay their moving expenses. The Employer shall not be responsible for moving or moving expenses if employees change their residence as a result of voluntary transfer.

Section 5:

Employers shall use their own available equipment together with all leased equipment under minimum thirty (30) days bona fide lease arrangements before hiring any extra equipment.

Section 6:

(a) Military Clause

Employees enlisting or entering the Military or Naval Service of the United States, pursuant to the provisions of the Military Selective Service Act of 1967, as amended, shall be granted all rights and privileges provided by the act.

Section 7:

(a) Within thirty (30) days after the signing of this Agreement, a list of employees arranged in the order of their seniority shall be posted in a conspicuous place at their place of employment, and a copy furnished to the Union. Claims for corrections to such lists must be made to the Employer and the Union within ten

(10) days after such posting and after such time, the lists will be regarded as correct. Any dispute if raised within the ten (10) day period concerning an employee's seniority shall be referred to the Grievance Procedure as provided herein.

(b) Should the Employer violate the principles set forth in this Article, said Employer shall compensate for the earning opportunity lost, and at the rates provided herein, those employees affected.

## ARTICLE VI
## MAINTENANCE OF STANDARDS

Section 1:

The Employer agrees that all conditions of employment relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and the conditions of employment shall be improved whenever specific provisions for improvements are made elsewhere in this Agreement.

Section 2.

During the term of this Agreement or any renewal thereof, the Employer shall not directly or indirectly operate, maintain or conduct any establishment or place of business, or cause any establishment or place of business to be operated or maintained or conducted where the effect thereof is to render the terms of this Agreement inapplicable or for the purpose of evading the terms of this Agreement.

Section 3:

If the Employer wishes to put into use any type of equipment and/or operations or jobs for which rates of pay are not established by this Agreement, such equipment, operation or job shall not be put into force until the use of such equipment, operation or job and the rate of pay shall have been established by the negotiation committee between the parties.

Section 4:

(a) Extra-Contract Agreements

The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such agreement shall be null and void.

Section 5:

(a) Work-week reduction.

In the event that the maximum work-week is reduced by legislative act to a point below the regular work-week provided herein, the contract shall be re-opened for wages only.

-8-

**ARTICLE VII**
**GRIEVANCE PROCEDURE**

Section 1:

A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute.

Any grievance arising between the Company and the Union or an employee represented by the Union shall be settled in the following manner:

Step 1:  The aggrieved employee or employees must present the grievance to the Shop Steward within ten (10) working days after the reason for the grievance has occurred, except no time limit shall apply in case of violation of wage provisions of the Agreement. If a satisfactory settlement is not effected with the foreman within ten (10) working days, the Shop Steward and employee shall submit such grievance in writing to the Union's Business Representative.

Step 2:  The Business Representative shall then take the matter up with a representative of the Company with authority to act upon such grievance. A decision must be made within ten (10) working days. If no satisfactory settlement can be agreed upon, the matter shall be referred by either party or both to the Massachusetts Board of Conciliation and Arbitration, and both parties agree that the subject matter shall be settled by said Board. The decision of said board shall be final and binding and be retroactive from the date of dispute. The Board shall make no rules or render any decision which conflict with the provisions of this Agreement.

Step 3:  If the Company fails to comply with any settlement of the grievance or fails to comply with the procedures of this Article, the Union has the right to take all legal and economic action to enforce its demands.

Section 2:

Any Shop Steward shall be permitted to leave his or her work to investigate and adjust the grievance of any employee within their jurisdiction after notification to their supervisor. Employees shall have the Shop Steward or a representative of the Union present during the discussions of any grievance with representatives of the Company.

Section 3:

Notwithstanding anything herein contained, it is agreed that in the event any employer is delinquent at the end of a period in the payment of its contribution to the Health and Welfare Fund or Pension Fund,

-9-

created under this Agreement in accordance with the rules and regulations of the Trustees of such Funds, after the proper official of the Local Union has given 72-hours' notice to the Employer of such delinquency in Health and Welfare and/or Pension payments, the employees or their representatives shall have the right to take such action as may be necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

## ARTICLE VIII
## PROTECTION OF RIGHTS

Section 1:

(a) Picket Lines

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of unions party to this Agreement, and including primary picket lines at the Employer's place of business.

Section 2:

(a) Struck Goods

It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced if any employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE IX
## DISCHARGE AND SUSPENSION

(a) The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension, shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union, except that no warning notice need be given to an employee before said employee is discharged if the cause of such discharge is dishonesty or drunkenness resulting in serious accident while on duty, or the carrying of unauthorized passengers. The warning notice as herein provided shall not remain in effect for a period of more that nine (9) months from date of said warning notice.

(b) Discharge must be by proper written notice to the employee and the Union. Any employee may request an investigation as to said discharge or suspension. Should such investigation prove that an injustice has been done an employee, said employee shall be re-instated. Appeal from discharge, suspension or warning notice must be taken within ten (10) days by written notice, and a decision reached within thirty (30)

-10-

days from the date of discharge, suspension or warning notice. If the employee involved is not within the home plant area when the action of discharge, suspension or warning notice is taken, the ten (10) day period will start from the date of the employee's return to the home plant. If no decision has been rendered on the appeal within thirty (30) days the case shall then be taken up as provided for in Article VII of the Agreement.

## ARTICLE X
## PAYROLL PERIOD

(a) The payroll period shall be run from Friday to Thursday inclusive with payday not later than Friday noon of the next week. Each employee shall be provided with a statement of gross earnings and an itemized statement of deduction made for any purpose each week. When the regular pay day occurs on a holiday or day celebrated as such, the Employer shall pay the employees on the regular work day immediately preceding the holiday.

(b) The Employer agrees to pay casual employees at the completion of their work whenever it is possible to do so, or to mail a check to the employees at the address designated by the employees within forty-eight ( 48) hours.

## ARTICLE XI
## SUNDAYS AND HOLIDAYS

(a) The following shall be recognized as paid holidays and all employees shall be paid eight ( 8) hours' straight time pay therefor:

New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Day after Thanksgiving and Christmas

In January of each year, the company will post which of the three days will be half-staff days in that year.

(b) Regular employees shall be paid for each recognized holiday, or the day celebrated as such, irrespective of what day of the week the holiday falls, on the basis of eight (8) hours at their straight time rate, provided they work any day during the payroll period. Any regular employees laid off for lack of work shall not be deprived of their holiday pay if the layoff does not exceed thirty (30) days' duration. Regular employees are entitled to holiday pay if the holiday falls within a period of absence due to occupational injury. Regular employees required to work on any such days shall be paid the applicable premium rate in addition to the holiday pay.

(c) Spare employees who work three (3) days during the payroll period in which a holiday occurs shall be paid for such holiday on the same basis as regular employees.

(d) If any of the above named holidays occur when an employee is on vacation, said employee shall receive an extra day's pay in lieu of the holiday.

(e) The applicable minimum rate for work performed on Sundays or holidays, as such, shall be two (2) times the normal rate as shown in the Wage Rate Schedule herein for the first eight (8) hours of work, which shall be a guarantee. Work performed after eight (8) hours on those days shall be paid for at one and one-half (1-1/2) times the applicable premium rate.

(f) Employees on night work whose regular work begins on a Sunday or holiday evening, or ends on a Sunday or holiday morning, shall be given either the night before or the night after off, for their Sunday or holiday, in accordance with the Work Schedule.

Regular employees shall not be deprived of their sixth punch by the use of extra help. Except in cases specifically agreed upon between the Employer and the Union, work on a night shift shall be treated as being performed on the day on which the shift ends. The holiday night shall not be staggered by the splitting of a single shift.

(g) Each Department must have adequate staffing on half-staff holidays. Employees who work half-staff holidays may select another day of their choice as holiday time. Selection should be made on the basis of seniority and have the approval of the department head. Employees will be notified seven (7) days in advance to work half-staff holidays. The Employee will give Company seven (7) days notice to take another day of their choice. Should the Employee be required to work on that rescheduled day, he shall receive appropriate holiday premiums for that day of work.

## ARTICLE X11
## VACATIONS

(a) Employees who have been on the Employer's payroll for one (1) year and who have worked at least one hundred and thirty-five (135) days during that year, including any absence resulting from the performance of duties under this Agreement, shall be entitled to two (2) weeks of vacation with pay in each year. The requirement of one hundred and thirty-five (135) days of employment applies to the first year of employment only. In subsequent years all employees must work a minimum of twenty-five ( 25) days to qualify for vacation.

(b) Employees with six (6) years or more service shall be entitled to three (3) weeks of vacation with pay in each year.

(c) Employees with fifteen (15) years or more service shall be entitled to four (4) weeks of vacation with pay in each year.

(d) Red circle for older employees with five (5) weeks vacation.

(e) Vacations must be taken between May 1st and October 31, unless otherwise mutually agreed to between the Employer and the Union and any employee who has completed the required service before or within the vacation period shall be granted a vacation as provided herein.

(f) The vacation schedule must be posted by the Employer not later than April 1st to allow employees in the order of their seniority to make their vacation selection. The schedule shall remain posted for thirty (30) days after which time it shall be taken down and any employees failing to make their selection during that period shall be assigned to whatever vacation period may be open.

(g) Any employees who are discharged or who quit between January 1st and May 1st shall receive the vacation allowance due them for that year. Any employees who complete one (1) year of service between November 1st and December 31st shall be entitled to one (1) week's pay if they quit or are discharged. In no event shall vacation pay be less than the equivalent of forty (40) hours pay at the employee's normal rate of pay.

(h) All regular employees shall receive their vacation pay due them in advance on the basis of their earnings for the previous calendar year ending December 31st, one fifty-second (1/52nd) of their earnings for each week of vacation, but not less than forty (40) hours' pay per week at the current hourly rate.

(i) New employees hired during the previous year in order to be eligible for a vacation must have worked a minimum of one hundred thirty-five (135) days and must be on the Employer's payroll for a period of one year. New employees hired during the previous year who are entitled to a vacation and older employees who do not work a full year shall received vacation pay equal to the averaged of their earnings for the full weeks which they worked in that year, with a minimum of forty (40) hours at the current hourly rate.

(j) Upon discharge by the employer, or quit by the employee, earned vacation time and pay shall be included in all final wage payments. In case of death of an employee who is eligible for a vacation, vacation pay due such an employee shall be paid to the employee's estate.

(k) An Employee may use up to five (5) days of vacation time as individual days off. To do so he must: 1.) indicate in writing to his supervisor by April 1 of his desire to use a week of accrued vacation time in units of single days and, 2.) notify his supervisor at least two (2) weeks in advance, of his wish to take a day (or days) off. If more than one individual wants a specific day (or days) off, seniority will prevail.

## ARTICLE XIII
## MISCELLANEOUS

## Section 1: Accident Reports

Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by their Employer, the employees before going off duty, and before starting their next shift, shall make out an accident report, in writing, on forms furnished by the Employer, and shall turn in all available names and addresses to the accident. Such report shall be made out on the Company time.

## Section 2: Court Appearance

When employees are required to appear in any court for the purpose of testifying, because of any accident they may have been involved in during working hours, such employees shall be reimbursed in full by the Employer for all earning opportunity lost because of such appearance. The Employer shall furnish the employees who are involved in an accident during working hours, with bail, bond and legal counsel, and shall pay in full same. Said bail, bond and legal counsel shall remain assigned to the employee until all legal action in connection with said accident is concluded, provided the employee is not charged and convicted of criminal negligence. This section shall not apply to employees who are found guilty of drunken driving when involved

in an accident during working hours. The Employer shall assume all responsibility for all court costs, legal fees and bail bond fees, for any employee who is involved in any accident, or accidents during working hours, and shall assume all responsibility for all judgments and awards against an employee who is involved in any accidents during working hours, which results through court action against said employee, except as provided above.

## Section 3: Safety Violations

(a) **Equipment** - Employees shall not be held responsible for vehicles not properly equipped to comply with State Motor Vehicle Laws, and shall be compensated for fines and time lost if summoned to court, etc., because of the same.

(b) **Overloads**- **Employees** shall not be held responsible for overloading vehicles. Whenever an employee is penalized because of such overload, the Employer shall bear all costs in connection with such overload penalty, and shall pay all damages and assessments against the employee, including accrued overtime for delay, and/or any lost earning opportunity that the employee might suffer. In the event the employee shall suffer a revocation of said chauffeur's license because of the violation of any laws by the Employer, said Employer shall provide suitable and continued employment for such employee, at not less than the employee's regular earnings at the time of revocation of license, for the entire period of revocation of license, and the employee shall be reinstated to the employee's previous assignment held prior to revocation of driver's license, after said driver's license is restored.

(c) **Winter Safety Equipment** - The Employer shall install heaters, defrosters and skid chains or equipment required by law on all trucks and tractors.

(d) **Defective Equipment** - No employee shall be required to drive or to operate or work upon any vehicle that is not equipped with all safety appliances prescribed by law or which vehicle or its equipment is in defective condition. No employee shall be subject to disciplinary action for refusing to operate such equipment.

(e) The employee shall report all defects of equipment to the Employer on such forms or in such manner as the Employer may require. All equipment which is refused because not mechanically sound or properly equipped shall be appropriately tagged so that it cannot be used by any other drivers until the Maintenance Department has adjusted the complaint.

## Section 4: Bonds

Should the Employer require any employee to give bond, cash bond, shall not be compulsory, and any premium involved shall be paid by the Employer.

## Section 5: Examinations

All examinations when required by the Employer and performed under his direction shall be paid for by the Employer. Employees shall be paid for all time required to take all such examinations.

## Section 6: Personal Identification

If the Employer requires employees to carry personal identification, the cost of such personal identification shall be borne by the Employer.

## Section 7: On-the-Job Claims

The Employer agrees to cooperate toward the prompt disposition of employee on-the job injury claims.

## Section 8 Loss or Damage

No employee shall be required to pay for any loss or damage to freight or equipment.

## Section 9: Access to Premises

Authorized agents of the union shall have access to the Employer's establishment during working hours, including the right to check trucks in transit, investigate working conditions, collect dues, and inspect all time cards, log books and other payroll records of the Employer, for the purpose of determining whether or not the terms of this Agreement are being complied with. The Employer will make such records available within seven (7) days of the Union's request and will provide a suitable bulletin board in a conspicuous place for posting of information of interest to the members of the Union.

## Section 10: Injury On the Job

When regular employees are injured on the job, they shall be guaranteed eight (8) hours' pay for the day injured, provided they are instructed to cease work as a result by the Employer or physician. If required to visit hospitals, clinics, doctors' offices or other places for treatment or diagnosis, during days they are working during working hours, they shall be paid for the time involved in travel and treatment with a guarantee of eight (8) hours, and if required to make such visit outside working hours, they shall be paid for the time involved in travel and treatment, but not less than two (2) hours at their normal straight time rate of pay.

## Section 11:

The employer shall not hire employees who are gainfully employed on a full-time basis elsewhere inside or outside the industry.

## Section 12: Other Equipment

(a) The Employer shall not require as a condition of continued employment that an employee purchase a truck, tractor, and/or tractor and trailer or other vehicular equipment.

(b) The Employer agrees not to hire any outside equipment when he has available equipment of his own.

(c) The Employer will not hire outside trucks except to supplement its own equipment when such equipment is in full use. When hired trucks are required, the employees required to operate and work on them, irrespective of ownership, shall be paid as employees of the Employer and shall be governed by the terms of this Agreement while so employed.

## Section 13: Death in the Family

In the event of a death in the employee's immediate family, i.e., Father, Father-in-law, Mother, Mother-in-law, Foster Parents, Sister, Sister-in-law, Brother, Brother-in-law, Son, Daughter, Husband, Wife, or Grandparents, it is recognized by the parties that the employee may need time off to attend the funeral services from the day of the death to the day of the funeral. If any of these days off are the employee's scheduled working days, the employee shall suffer no loss in pay, exclusive of overtime, but not to exceed a maximum of three (3) days. Notwithstanding the above, should an employee suffer a death in the employee's immediate family, said employee shall be guaranteed at least three (3) days of paid funeral leave.

## Section 14: Jury Duty

Employees called for Jury duty shall be paid the difference between the Jury pay received and the amount ordinarily paid them for a forty (40) hour work week, exclusive of overtime, provided the employees work on regularly scheduled work days when they do not have to report for jury duty.

## Section 15: Uniforms

If the Employer requires employees to wear uniforms, said uniforms shall be paid for and laundered by the Employer. The Employer shall supply and pay for any protective wearing apparel for all employees while assigned to the handling of hazardous or abnormal freight, and shall also supply protective outer garments for all yard employees.

## Section 16:

Benefits and privileges such as Profit Sharing, paid vacations, discounts, insurance, sick benefits, hospitalization, etc., now enjoyed by the employees will continue to be available to all eligible employees and subject to economic conditions and national company policy with respect thereto.

The Union will be informed in writing of any change of policy.

## Section 17: Lie Detector Test

The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

### ARTICLE XIV
### HOURS OF WORK AND OVERTIME

## Section 1:

(a) Five (5) days shall constitute a normal week's work for all employees from Monday to Friday inclusive, and the hours of labor each day shall be worked in uninterrupted succession. All time worked in excess of eight (8) hours per day or forty (40) hours per week shall be paid for as overtime at one and one-half times the normal rate.

(b) All regular employees shall be guaranteed forty (40) hours' work or pay. In any week in which the paid holidays fall, the guaranteed work week shall be thirty-two (32) hours, and all hours in excess of thirty-two (32) hours in such week shall be paid at the rate of time and one-half the regular rate.

Section 2:

(a) The working day shall begin no later than 8:00 AM and the starting time shall be computed from the time of the employee's arrival at the Employer's plant until leaving the same.

(b) If an employee is required to report for work before 8:00 AM, said employee shall be paid for such period at the overtime rate applicable for that day. Where an employee is required to report for work at 8:00 AM, or any time thereafter, until 4:30 PM, the starting time shall be as of 8:00 AM and the employee shall be paid a full day's pay.

(c) Such employees ordered to report for work before such starting time shall be paid at time and one-half the appropriate rate for that day for work prior to the regular starting time. Any employees ordered to work after the regular starting time shall have their time revert back to their regular starting time. No change of such starting time shall be made by the Employer unless approved by the Union.

Section 3:

(a) Any Employee who is called or reports as scheduled shall be guaranteed a minimum of eight (8) hours' work or pay.

(b) All employees required to report for work on Saturday, or on the sixth report in a payroll period shall be guaranteed a minimum of eight (8) hours' work at their applicable premium rate of time and one-half. Any time worked in excess of eight (8) hours on those days shall be paid for at one and one-half times the applicable premium rate.

Section 4:

(a) Except for meal time, working time for all employees shall start when they are instructed to report and do report at plant and shall continue until relieved from duty at same regardless of occupation. Employees shall be allowed time out for meals which shall be one-half (1/2) hour and shall not begin until the employees have worked four (4) hours, but must begin before they have completed five (5) hours of work. All employees shall be entitled to twenty (20) minutes for lunch if they work more than eight (8) hours.

(b) There shall be two (2) break periods of twenty minutes duration each workday: twenty (20) minutes in the morning between the second and third hours of work and twenty (20) minutes in the afternoon between the sixth and seventh hours of work.

Section 5:

(a) A daily time record shall be maintained by the Employer for all of its employees. Any Employer who employs five (5) or more employees shall have a time clock, and the employees' time shall be computed by the time clock on time cards. Any Employer with less than five (5) employees who does not have time clocks shall permit employees to keep their own time records.

(b) All employees shall punch in their own time card at the start of the day and punch out their own time card at the completion of the day's work at the Employer's place of business.

(c) Employees assigned to work and/or completing their work away from the Employer's place of business shall be exempt from punching in and out. In the event that any employees are ordered to report at, or leave their vehicle at a different place than their usual starting point, such employees shall be paid transportation expenses back to their starting point. All such traveling time shall be considered as time worked.

## ARTICLE XV
## WAGES AND ALLOWANCES

(a) Wage rates and classifications as set forth in Schedule A (attached) shall become effective on April 1, 1994.

(b) Employees older in service and in the order of their seniority shall be entitled to the work available from Monday to Friday inclusive in amounts not less than those designated in the Schedule above. Should the Employer violate this principle, he shall compensate for the earning opportunity lost and at the rates provided herein those employees affected.

(c) Any employee working in a higher pay classification for any part of the day shall receive the higher rate of pay for the entire day.

(d) No employees shall be required to deadhead for any rate less than their normal rate of pay.

(e) Any employee required to sleep away from home shall be paid Twenty Dollars ($20.00) for hotel and meal expenses.

(f) Any employee required to report after noontime and before 7:00 AM shall be paid a differential of twenty cents ($.20) per hour for all hours worked.

(g) All employees shall be allowed seven (7) days of sick leave with pay each year. All unused sick leave days shall be paid to the employee at the end of the calendar year.

## ARTICLE XVI
## DROPPING TRAILERS

The Employer will not drop a trailer to be loaded or unloaded at any place unless the work of loading, unloading and switching is performed by his employees working under this Agreement.

# ARTICLE XVI
# PAY FOR TIME

### Section 1:

All employees covered by this Agreement shall be paid for all time spent in the service of the Employe Rates of pay provided for by this Agreement shall be minimums. Time shall be computed from the time th: the employees are ordered to report for work and register in and until the time they are effectively release from duty.

### Section 2:

All time lost due to delays as a result of overloads or certificate violations involving Federal, State or Cit regulations, which occur through no fault of the employees, shall be paid for. Such payment for employee' time when not driving shall be the hourly rate.

# ARTICLE XVIII
# HEALTH AND WELFARE FUND

(a) Commencing with the 1st day of April 1998 and for the duration of the current collective bargainin agreement and any renewals or extensions thereof, the Employer agrees to make payments to the respectiv Health and Welfare Funds for each and every employee performing work within the scope of and/or covere by this collective bargaining agreement, whether such employee is a regular, probationary, temporary c casual employee, irrespective of his status as a member or non-member of the Local Union from the first hou of employment subject to this collective bargaining agreement as follows:

(b) Commencing with the 1st day of April 1998 the Employer shall contribute to the respective Health an Welfare Funds the sum of $3.76½ per hour figured to the nearest quarter hour for which an employe covered by this Agreement receives pay up to a maximum of forty (40) hours but not more that $150.50 pe week for any one employee.

Commencing with the 1st day of April 1999 the Employer shall contribute to the respective Health an Welfare Funds the sum of $3.76½ per hour figured to the nearest quarter hour for which an employe covered by this Agreement receives pay up to a maximum of forty (40) hours but not more that $150.50 pe week for any one employee.

Commencing with the 1st day of April 2000 the Employer shall contribute to the respective Health an Welfare Funds the sum of $4.16½ per hour figured to the nearest quarter hour for which an employe covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $166.50 pe week for any one employee.

(b) Commencing with the 1st day of April 2001 the Employer shall contribute to the respective Health an Welfare Funds the sum of $4.41½ per hour figured to the nearest quarter hour for which an employe covered by this Agreement receives pay up to a maximum of forty (40) hours but not more that $176.50 pe week for any one employee.

Commencing with the 1st day of April 1998 and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the respective Health and Welfare Funds as follows:

(1) The Employer agrees to make contributions up to a maximum of forty (40) hours in behalf of all regular employees who may be on layoff status during any payroll period but has completed three (3) days of work in that payroll period.

For purposes of this Article, each hour paid for or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is received by the employee shall be counted as hours for which contributions are payable.

If a regular employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contribution of 32 hours for a period of four (4) weeks. If a regular employee is injured on the job the Employer shall continue to pay the required contributions until such employee returns to work; however, such contributions of 32 hours shall not be paid for a period of more than twelve (12) months.

There shall be no deduction from equipment rental of owner-operators by virtue of the contributions made to the Health and Welfare Fund, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensation.

Hourly contributions to the Health and Welfare Fund must be made for each hour worked on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and although contributions may be made for those weeks into some other Health and Welfare Fund.

In the case of employees paid on a mileage basis, the number of hours of contribution to the Health and Welfare Fund shall be determined by dividing that employee's gross earnings for the week by the current hourly rate. Gross earnings shall include any other hours paid for, such as waiting time, breakdown time, pick-up and drop-off time, subject to the maximum weekly amount of contributions set forth above, not to exceed forty (40) hours per week per employee.

All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Welfare Fund.

If an Employer fails to make contributions to the Welfare Fund within 72 hours after the notice of delinquency set forth in this Agreement, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with the attorneys' fees and such penalties which may be assessed by the Trustees.

The Employers' liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

-20-

(c) The Emplc    s and Union which are signatories her    ratify the designation of the Employer an the Employee Trustees under such Agreement, and ratify all action already taken, or to be taken by suc Trustees within the scope of their authority.

(d) All Employers contributing hereunder shall post each month at each terminal or other place c business where employees have easy access thereto an exact copy of the remittance report form c contributions sent to the fund.

(c) Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to th Health and Welfare Fund and the Local Union serves a 72-hour notice of delinquency set forth in thi Agreement, such Employer after satisfying the delinquency and becoming current, and then during the term c this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that secon delinquency and/or any further delinquencies during the term of this Agreement.

(f) In the event the Negotiating Committee of the National Freight Agreement shall decide to appl; additional increase to the Health and Welfare Fund, the Employer shall, upon receipt of written notice from the Union, increase its contributions to the Teamsters Local No. 25 Health and Welfare Fund in the amount indicated on the same effective dates.

## ARTICLE XIX
## PENSION FUND

(a) This Pension Article shall supersede and prevail over any other inconsistent provisions or article contained within this agreement.

(b) Commencing with the 1st day of April 1998 and for the duration of the current collective bargainin; agreement between Local Union 25 and the Employer, and any renewals or extensions thereof, the Employe agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each an every employee performing work within the scope of and/or covered by this collective bargaining agreement whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status a a member or non-member of the Local Union, from the first hour of employment subject to this collectiv bargaining agreement as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay o for which pay is due the Employer shall make a contribution of $3.46 to the New England Teamsters an Trucking Industry Pension Fund but not more than $138.40 per week for any one employee from the firs hour of employment in such week.

Commencing with the 1st day of April 1999 the said hourly contribution rate shall be $3.76 but not mor than $150.40 per week for any one employee.

Commencing with 1st day of April 2000 the said hourly contribution rate shall be $3.91 but not more tha $156.40 per week for any one employee.

Commencing with 1st day of April 2001 the said hourly contribution rate shall be $4.06 but not more tha $162:40 per week for any one employee.

Commencing with the 1st day of April 1998 and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund as follows:

(1) The Employer agrees to make contributions up to a maximum of forty (40) hours in behalf of all regular employees who may be on layoff status during any payroll period but has completed three (3) days of work in that payroll period.

For purposes of this section, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week, whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

In the case of employees paid on a mileage basis, the number of hours of contribution to the Pension Fund shall be determined by dividing that employee's gross earnings for the week by the current hourly rate. Gross earnings shall include any other hours paid for, such as waiting time, breakdown time, pick-up and drop-off time, subject to the maximum amount of contributions set forth above, not to exceed forty (40) hours per week per employee.

If a regular employee (as defined in the collective Bargaining agreement) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks for forty (40) hours per week. If an employee is injure on the job, the Employer shall continue to pay the required contributions at the rate of forty (40) hours for each such week until the employee returns to work; however, such contributions of forty (40) hours shall not be paid for a period of more that twelve (12) months.

(c) The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958, and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(d) The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking Industry Pension Fund shall be at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(e) It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing the work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this Section of the collective bargaining agreement regarding coverage and contributions, such audit may, at the option of the Trustees, be conducted by an independent certified public accountant or a certified public accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Fund have been under reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this Agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

There shall be no deduction for equipment rental of owner-operators by virtue of the contributions made to the Pension Fund, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensations.

Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and, although contributions may be made for those weeks into some other Pension Fund.

(f) No oral or written modification of this section regarding pensions and retirement shall be made by the Local Union or the Employer and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this section or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

(g) All Employers contributing hereunder shall post each month at each terminal or other place of business where employees have easy access thereto an exact copy of the remittance report form of contributions sent to the Fund.

(h) Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to the Pension Fund and the Local Union serves a 72-hour notice of delinquency set forth in this Agreement, such Employer after satisfying the delinquency and becoming current, and then during the term of this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that second delinquency and/or any further delinquencies during the term of this Agreement.

(i) In the event the Negotiating Committee of the National Freight Agreement shall decide to apply additional increases to the Pension Fund, the Employer shall upon receipt of written notice from the Union

increase its contributions to the New England Teamsters and Trucking Industry Pension Fund in the amounts indicated on the same effective dates.

## ARTICLE XX
## SEPARABILITY AND SAVINGS PROVISIONS

### Section 1:

If any Article or Section of this Agreement or if any Riders thereto should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any Riders thereto, or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

### Section 2:

In the event that any Article or Section is held invalid or enforcement of or compliance with which has been restrained, as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations, upon the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provisions of this Agreement to the contrary.

## ARTICLE XXI
## EMERGENCY REOPENING

### Section 1:

In the event of war, declaration of emergency or imposition of economic controls during the life of this Agreement, either party may re-open the same upon sixty (60) days written notice and request re-negotiation of matters dealing with wages and hours.

Upon failure of the parties to agree in such negotiations either party shall be permitted all lawful economic recourse to support its request for revisions. If Governmental approval of revisions should become necessary, all parties will cooperate to the utmost to attain such approval.

### Section 2:

The parties agree that the notice provided herein shall be accepted by all parties as compliance with the notice requirements of applicable law, so as to permit economic action at the expiration thereof.

## ARTICLE XXII
## PIGGYBACK OR OTHER SUBSTITUTE METHODS OF OPERATION

Section 1:

The Employer herewith agrees that should it decide to change its operation to include a railroad piggyback operation, or any other form of substitute service, the same shall be put into effect, only, after all the details of such substitute operation have been operated with the Union. It shall be a violation, of this Agreement for the Employer to include a railroad piggyback or any other form of substitute service.

Section 2:

If the parties are unable to agree upon such matters the Union may engage in lawful economic recourse in support of its demands.

## ARTICLE XXIII
## MILEAGE RATES

For the duration of this current collective bargaining agreement, all trips that exceed 330 miles shall be computed at the, rate of $0.3021 a mile to equalize the mileage formula.

Effective April 1, 1991, all runs will have a formula of 275 miles equal eight (8) hours pay at $ 13.51 per hour which equals $ 108.08, a guarantee of a day's pay.

Effective January 1, 1992, all runs will have a formula of 275 miles equal eight (8) hours pay at $ 13.61 per hour which equals $ 108.88, a guarantee of a day's pay.

Effective January 1, 1993, all runs will have a formula of 275 miles equal eight (8) hours pay at $ 13.71 per hour which equals $ 109.68, a guarantee of a day's pay.

## ARTICLE XXIV
## SUBCONTRACTING

Section 1:

The Employer agrees to refrain from using the services of any person who does not observe the wages, hours and conditions of employment established by Labor Unions having jurisdiction over the type of services performed.

Section 2:

For the purpose of preserving work and job opportunities for the employees covered by the Agreement, the Employer agrees that no work or services of the kind, nature or type covered by, presently performed, or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or nonunit employees, unless otherwise provided in this Agreement.

## ARTICLE XXII
## PIGGYBACK OR OTHER SUBSTITUTE METHODS OF OPERATION

Section 1:

The Employer herewith agrees that should it decide to change its operation to include a railroad piggyback operation, or any other form of substitute service, the same shall be put into effect, only, after all the details of such substitute operation have been operated with the Union. It shall be a violation, of this Agreement for the Employer to include a railroad piggyback or any other form of substitute service.

Section 2:

If the parties are unable to agree upon such matters the Union may engage in lawful economic recourse in support of its demands.

## ARTICLE XXIII
## MILEAGE RATES

For the duration of this current collective bargaining agreement, all trips that exceed 330 miles shall be computed at the, rate of $0.3021 a mile to equalize the mileage formula.

Effective April 1, 1991, all runs will have a formula of 275 miles equal eight (8) hours pay at $ 13.51 per hour which equals $ 108.08, a guarantee of a day's pay.

Effective January 1, 1992, all runs will have a formula of 275 miles equal eight (8) hours pay at $ 13.61 per hour which equals $ 108.88, a guarantee of a day's pay.

Effective January 1, 1993, all runs will have a formula of 275 miles equal eight (8) hours pay at $ 13.71 per hour which equals $ 109.68, a guarantee of a day's pay.

## ARTICLE XXIV
## SUBCONTRACTING

Section 1:

The Employer agrees to refrain from using the services of any person who does not observe the wages, hours and conditions of employment established by Labor Unions having jurisdiction over the type of services performed.

Section 2:

For the purpose of preserving work and job opportunities for the employees covered by the Agreement, the Employer agrees that no work or services of the kind, nature or type covered by, presently performed, or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or nonunit employees, unless otherwise provided in this Agreement.

-25-

Section 3:

The Employer may subcontract work when all of his regular employees are working, except that in no event shall road work presently performed or runs established during the life of this Agreement be farmed out. No dock work shall be farmed out except for existing situations established by agreed to past practices. Overflow loads may be delivered by drivers other than the Employer's employees provided that this shall not be used as a subterfuge to violate the provisions of this Agreement. Loads may also be delivered by other agreed to methods or as presently agreed to.

## ARTICLE XXV
## SYMPATHETIC ACTION

In the event of a labor dispute between any Employer or Union, during the course of which dispute such Union engages in lawful economic activities which are not in violation of this Agreement, then any other affiliate of the International Brotherhood of Teamsters, having an agreement with such Employer shall have the right to engage in lawful economic activity against such Employer in support of the Union which is party to this Agreement notwithstanding anything to the contrary in the agreement between such Employer and such other affiliate.

## ARTICLE XXVI
## NON-DISCRIMINATION

Section 1:

In accordance with applicable law, the Employer and the Union agree not to discriminate against any individual, with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, pregnancy, or age, nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, pregnancy, or age.

Section 2:

The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's lawful activity and/or support of the Union.

Section 3:

The term "he" or "his" as used in this Agreement is not meant to be discriminatory and shall apply equally to male and female employees.

-26-

## ARTICLE XXVII
## TERMINATION AND RENEWAL

Section 1:

The signature of the Employer below indicates that he understands and is willing to have his present plant or any that he may open within the jurisdiction of this Local Union operated in accordance with the terms of this Agreement.

Section 2:

This Agreement shall take effect on, and all changes with respect to wages and conditions shall be effective from April 1, 1998 through March 31, 2001 at midnight and shall then and thereafter renew itself from year to year unless either party hereto gives written notice to the other party, not less than sixty (60) days prior to the date of expiration, of a desire to change or amend the terms and conditions thereof.

**IN WITNESS WHEREOF**, the parties have hereunto executed this Agreement. Signed this _22ⁿᵈ_ day of _March_ , 2002 by our duly authorized representatives.

**FOR THE EMPLOYER:**

**CAMBRIDGE STREET METAL CO., INC.**
500 Lincoln Street
Allston, MA 0213

**FOR THE UNION:**

**TEAMSTERS, CHAUFFEURS WAREHOUSEMEN AND HELPERS LOCAL NO. 25,** affiliated with the International Brotherhood of Teamsters Local 25

By: _Kenneth C. Raymond_

Title: _Vice - President_

By: _William H- Carnes_

VICE PRESIDENT
Title: _BUSINESS AGENT_

**Schedule "A"**
**WAGE RATES**

| **EMPLOYEE** | **EFFECTIVE**<br>**10/7/98** |
|---|---|
| Ernest Robicheau | $15.23 |
| Thomas Robicheau | $14.86 |
| Peter Ellis | $13.92 |

| | **EFFECTIVE**<br>**9/15/99** |
|---|---|
| John Flynn | $14.75 |

-28-