UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| RODNEY G. SMITH, EXECUTIVE DIRECTOR of the TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN,<br><br>    Plaintiff,<br><br>v.<br><br>CAMBRIDGE STREET METALS COMPANY, INC.<br><br>    Defendant. | Civil Action No. 04-12527-NG |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

### I.      Introduction

In November 2004, the plaintiff, Rodney G. Smith, Executive Director of Teamsters Local Union 25 Health Services and Insurance Plan (hereinafter "the Plan" or "the Plaintiff") filed suit pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), against Cambridge Street Metals Company, Inc., (hereinafter "Cambridge Street Metals" or "the Defendant") to compel production of its payroll records so that it could conduct an audit of the Defenant's records and contributions to the Plan from January 1999 through December 2003. The defendant contends that this dispute is precluded by the doctrine of *res judicata* by a Stipulation of Dismissal with Prejudice executed by the parties in December 2003 concerning a suit based on Cambridge Street Metals' failure to make any contributions to Plan for the period of January 2003 through March 2003.

### II.      Facts

The two suits at issue in this matter are: (1) the complaint filed in April 2003 in which the Plan alleged that Cambridge Street Metal failed to make contributions to the Plan for the months

of January 2003 and February 2003 (hereinafter, "April 2003 Complaint"); and (2) the complaint filed in November 2004 in which the Plan is suing to compel Cambridge Street Metals to submit to an audit of its contributions (hereinafter "November 2004 Complaint").

In its Memorandum in Support of Its Motion to Dismiss, the Defendant argues that the Plaintiff's suit to compel an audit of its payroll records is barred by the doctrine of *res judicata*. It contends that the Plaintiff"s cause of action to compel the production of records is "sufficiently identical to those brought – or which could have been brought – in the prior case." See Defendant's Memorandum in Support of Its Motion to Dismiss, p. 5.

The April 2003 Complaint concerned the Defendant's failure to make any contributions to the Plan for January and February 2003 or for any month thereafter. As such, that complaint stated a cause of action pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, for delinquent contributions. The April 2003 Complaint was not based on an audit for incorrect contributions, but rather on the Defendant's failure to submit any reports or contributions for a certain time period. In August 2003, by means of an affirmative defense plead by the Defendant, the Plan learned, for the first time, that the Defendant's employees were no longer members of Local 25 and therefore, could no longer be participants in the Plan. As such, the parties negotiated a settlement concerning the delinquencies that occurred while the employees of the Defendant were still receiving benefits from the Plan. The Voluntary Stipulation of Dismissal, signed by both parties in December 2003. The November 2004 Complaint, on the other hand, concerns the Defendant's refusal to comply with the terms of the collective bargaining agreement and trust agreement requiring it to allow the Fund to audit its records to ensure that it had made accurate contributions.

2

### III.   Argument

**The November 2004 Complaint Is Not Barred By Res Judicata Because Employee Benefits Plans Are Not Required To Bring All Claims Under A Trust And/or Collective Bargaining Agreement In A Single Complaint**

Suits under ERISA to compel audits as a means of determining if accurate reports and contributions were submitted to employee benefit plans, which may only be determined by means of an audit, are not barred by a prior complaint for delinquent contributions of an overlapping time period. See I.A.M National Pension Fund, Benefit Plan A v. Industrial Gear Manufacturing Company; 723 F2d 944 (D.C.Cir 1983); See Central States, Southeast and Southwest Areas Pension Fund v. Plymouth Concrete, Inc.,803 F.Supp. 169 (N.D. Ill. 1992). Because the Plaintiff's suit to compel an audit is not barred by *res judicata*, the Court should deny the Defendant's motion to dismiss.

Pursuant to the doctrine of *res judicata*, a final judgment of the merits of an action bars further claims by the parties (or those in privy with them) based on the same action. Montana v. United States, 40 U.S. 147, 153 (1979). The doctrine of *res judicata* promotes the goals of fairness and efficiency by preventing vexatious or repetitive litigation. Caballero-Rivera v. Chase-Manhattan Bank, N.A., 276 F.3d 85, 86 (1st Cir. 2002) citing Comm'r v. Sunnen, 333 U.S. 591, 597 (1948).  A claim will be precluded by *res judicata* if the following elements are demonstrated: (1) a final judgment on the merits in an earlier suit, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity between the parties in the two suits. Id. at 86-87 citing Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994).

The Plaintiff does not dispute the fact that the April 2003 Complaint concluded with a final judgment or that the parties are identical in the two suits. Rather, the Plan contends that the November 2004 Complaint constitutes an action that is not barred by the December 2003

3

Stipulation of Dismissal as it is not part of the same action or transaction as the original complaint.

In determining whether a new cause of action is barred by the doctrine of *res judicata*, the Court should consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2) (1982). The facts in the two complaints are wholly unrelated with the sole exception that they concern the same parties and the same collective bargaining and trust agreements. To force the Plaintiff to have brought these claims together would have offended the parties expectations. The first suit concerned the complete failure of the Defendant to make any contributions <u>after</u> December 2002 and it matured in early 2003. The second complaint concerns the Plan's attempts to determine if the Defendant accurately reported and made contributions for hours worked by employees and did not mature until the Defendant's repeated refusals to submit to an audit in 2004.

The Defendant contends that the Fund knew about the facts germane to November 2004 Complaint prior to the execution of the settlement agreement between the parties. Although the Plan and its auditors first informed the Defendant, in October 2003, that it was to be audited the Plan did not know, until January 2004, at the earliest, that Defendant would refuse to comply with the audit. By letter dated October 17, 2003, the Plan's auditors alerted the Defendant that an audit was to be conducted on January 10, 2004. A true copy of the October 17, 2003 letter is attached hereto as Exhibit 1. Subsequently, the day before the audit was to occur, the Defendant cancelled that appointment and it was re-scheduled until March 10, 2004. When the second appointment was cancelled, the Plan learned, for the first time, that the Defendant would not comply with the audit. As such, it could not have brought an action to compel the records for the

4

audit until March 2004, when it first learned that the Defendant would refuse to comply with the audit.

To determine whether a claim is barred by the doctrine of *res judicata*, the Court should analyze whether the Plan, in its November 2004 Complaint, is suing the Defendant under the same cause of action for which it sued the Defendant in April 2003. See Industrial Gear, supra, 723 F.2d at 947. The two causes of action, although both arising of the same contracts – namely the collective bargaining agreement and the trust agreement – are not identical or even similar. The April 2003 Complaint concerned only the Defendant's cessation of contributions to the Plan after December 2002. The November 2004 Complaint, despite the fact that the time period which it seeks to audit includes January and February 2003, asks the Court to compel the Defendant to submit to an audit of its employees' records and its contributions to the Plan in order to test the accuracy of contributions that the Defendant made, not whether the contributions were ever made to the Plan.

The Plan is "separate and distinct" from both the Defendant and the Union As such, it has no independent knowledge with which to verify the information in the Defendant's monthly reports. See Industrial Gear, 723 F.2d at 948. Therefore, in order to ensure that the monthly submissions of both reports and employers' contributions to the Plan are accurate, the Plan conducts periodic, random audits of monthly reports and payroll information. Id. Accordingly, before the Plan can file a suit for inaccurate contributions made to the Plan, the Plan must conduct an audit to determine the accuracy of contributions. In this case, the Defendant has refused to submit to an audit of any of its records for the period of January 1999 through December 2003.

In Industrial Gear, an audit conducted by the employee benefit plan of the employer's records for January 1973 through January 1977 revealed that the employer had failed to make

5

accurate contributions and thus, the suit was filed against the employer. Id. at 945-946. In January 1978, this suit was settled by a consent decree, which, in part, required the employer to submit reports and contributions for part of September through December 1977. Id. at 946. Pursuant to the consent decree, the court retained jurisdiction until October 31, 1978, during which time the employer was enjoined from failing to comply with the terms of the decree or failing to make submit any required reports or payments to the plan. Id.

In November 1981, the plan conducted another audit of the employer, covering the period, January 1977 through January 1981, which revealed that the employer had failed to make accurate contributions. Id. When the plan filed suit in July 1982, the employer claimed that the plan was barred, by *res judicata*, from seeking any contributions that were owed from January 1977 through October 1978. Id.

The Court found that the 1977 action did not raise the issue of the accuracy of reports and contributions submitted after January 1977 as it had no knowledge of the accuracy of the payments for this period because an audit of the that period had not yet been conducted. Id. at 949. As such, the D.C. Circuit Court of Appeals found that the preclusive effect of the decree attached only to issues actually litigated, not to what might have been litigated and determined. Id. Therefore, a suit to compel an audit was not found to be barred by the doctrine of *res judicata*. Id. at 950.

However, the Tenth Circuit Courts of Appeals, subsequent to the D.C. Circuit's decision in Industrial Gear, found that the decision in Industrial Gear was based on an improper application of the doctrine of *res judicata* and the claim that were allowed in Industrial Gear should have been barred by *res judicata*. See May v. Parker-Abbott Transfer and Storage, Inc., 899 F.2d 1007 (10th Circuit 1990). The Court found that because the claims were part of the

6

same transaction (i.e. obligations under the same contract) that any subsequent claims based on the contract would be barred by *res judicata*. May, supra, 899 F.2d at 1010.

Subsequent to the decisions of the D.C. and Tenth Circuit Courts, the Northern District of Illinois reviewed these circuit court decisions and found that the rationale of the D.C. Circuit was the interpretation that accurately depicted the realities of the administration of a multi-employer employee benefit fund. See Central States, Southeast and Southwest Areas Pension Fund v. Plymouth Concrete. Inc., 803 F.Supp. 169 (N.D.Ill. 1992). In Plymouth Concrete, the Fund sued the employer, Plymouth Concrete, seeking (1) payment of contributions owed for the period of September 1991 through February 1992 based on employee work history as reported to the Funds by the employer; and (2) the payment of contributions for the period between December 27, 1987 through September 21, 1991, that were revealed to be owed by an audit of the employer's records. Plymouth Concrete, supra, 803 F.Supp. at 170.

In April 1991, the Plan filed suit against Plymouth Concrete, seeking delinquent contributions on the basis of reported employee work history for the period of July 1990 through December 1990. Id. at 170. Because the employer agreed to pay the entire delinquent balance, the suit was dismissed with prejudice by a stipulation of the parties. Id. at 171. Therefore, in response to a subsequent suit, for accurate contributions following an audit, Plymouth Concrete contended that the Plan's claim was barred by *res judicata*. Id.

Similar to the D. C.Circuit, the Court found that the two suits differ in that they asserted different rights, alleged different injuries and arose from different facts. In the first suit, the Plan sought to collect delinquent contributions based solely on work history provided by the employer, whereas the second suit sought accurate contributions following an audit that revealed that the employer failed to accurately report the employees' work history and make contributions. Id. at 172.

The Court rejected the *dicta* of the Tenth Circuit in May, which found that the principles of ordinary contract disputes should be applied in determining whether *res judicata* barred the second action, meaning that the courts, using the transactional approach to *res judicata*, would find that a second action concerning the same contract would necessarily be barred because each contract constitutes a "transaction" and all claims under a contract must be brought together in one suit. Id. at 172. The Tenth Circuit, in May, relied on the following example for its interpretation of the transactional approach regarding contracts:

> A sues B for breach of contract calling for delivery of certain appliances, alleging as the breach that the appliances did not meet the agreed specifications. After judgment for B, A commences a second action, this time alleging late delivery of the appliances as the breach. The second action is precluded.

Id. at 172; May, 899 F.2d at 1010, quoting Restatement (Second) of Judgment § 25 comment b. illustration 2.

The Tenth Circuit had found that the suit brought to force the payment of delinquent monthly contributions was equivocal to "late delivery," and that the suit to compel an audit to ensure the accurate calculation of those contributions was analogous to a suit "to ensure that the payments meet the agreed specifications." May, 899 F.2d at 1010. Therefore, it found that the Plaintiff was bring piecemeal litigation of the sort that was barred by *res judicata*. Id.

Plymouth Concrete rejected the this analysis, finding that the conclusion of the D.C. Circuit best comported with prevailing business practices concerning multiemployer employee benefit plans and the underlying purposes of *res judicata*. Plymouth Concrete, 803 F.Supp. at 172. It found that the Tenth Circuit, in its decision, essentially ignored the how modern day pension funds were to operate, particularly the fact that the Fund is a separate and distinct entity from both the employer and the union representing the employees, and thus has no independent knowledge with which to verify the accuracy of the information supplied by the employer. Id.

Therefore, while the causes of action arise from the same underlying contract, they do not arise from "a single core of operative fact" because an action premised on the right to prompt payment "[a]rises out of different facts, at a different time, and from a different motivation than a suit to compel an audit and to recover any deficiencies the audit reveals. See Id.; See also May, 899 F.2d at 1011 (Logan, J. dissenting).

In general, suits for delinquent contributions are filed as a result of: (1) an employer's failure to make any contributions on behalf of an employee or group of employees; or (2) inaccurate contributions discovered by means of an audit. Employee benefit funds should not be forced to audit every employer against whom it brings suit for failure to make any contributions to the Plan at the time the litigation is pending or risk forfeiting its right to audit and bring suit in the future related to an employer's failure to make accurate contributions. The reality of fund management is such that trustees are dependent upon employers' honest and accuracy in reporting. However, an employee benefit fund, such as the Teamsters 25 Health Services and Insurance Plan, has no independent knowledge concerning whether an employer's contributions are accurate and must, therefore, conduct random, periodic audits. Therefore, the operative facts in a suit to compel payment for an employer failure to make contributions thus are fundamentally different from the operative facts in a suit to compel contributions after an audit reveals that the employer has failed to accurately make all required contributions.

### IV.    Conclusion

For the foregoing reasons, the Court should find that dispute in the Plaintiff's suit to compel an audit of the Defendant's records and contributions is not precluded by the doctrine of *res judicata*, and therefore, deny the Defendant's Motion to Dismiss.

For the Plaintiff,
**RODNEY G. SMITH,
EXECUTIVE DIRECTOR of the
TEAMSTERS UNION 25 HEALTH
SERVICES AND INSURANCE PLAN,**
By his attorneys,

/s/ Matthew E. Dwyer
Matthew E. Dwyer
B.B.O. # 139840
Kathleen A. Pennini
B.B.O. # 654573
Dwyer, Duddy & Facklam
Attorneys at Law, P.C.
One Center Plaza, Suite 360
Boston, MA  02108-1804
(617) 723-9777

**CERTIFICATE OF SERVICE**

I, Matthew E. Dwyer, hereby certify that I sent a copy of the foregoing document via first–class mail on March 3, 2005 to:

John M. Simon, Esq.
Stoneman, Chandler & Miller, LLP
99 High Street
Boston, MA  02110

/s/ Matthew E. Dwyer_____
Matthew E. Dwyer

f:\l25hsip\cambridge sheet metals (audit)\pldg\mem.opp.def.mot.dismiss.doc:blg